jar

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| **ROBERT L. BILLBE, JR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. 03-3100-JAR** |
| | ) | |
| **RAY ROBERTS, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a Petition for a Writ of Habeas Corpus (Doc.1) seeking federal habeas relief from a state conviction, pursuant to 28 U.S.C. § 2254, and a Motion for Discovery (Doc. 31).  After considering the parties' submissions, the Court denies the petition because Petitioner Robert L. Billbe, Jr. has failed to show that his constitutional rights were violated by ineffective assistance or conflict of interest of trial counsel.  The Motion for Discovery is also denied.[1]

## BACKGROUND

In September 1996, Robert L. Billbe, Jr. was convicted by a jury of aggravated kidnaping, rape, aggravated criminal sodomy, and criminal threat.  He was sentenced to 292 months imprisonment.  Highly summarized, the evidence at trial,[2] was that in January 1994, Billbe's stepdaughter (hereinafter referred to as the victim) with whom he lived, began receiving threatening and

---

[1]Billbe filed his motion for discovery on March 14, 2005, long after the parties had submitted this case to the Court.  In light of the findings in this Memorandum and Order, the Court determines that the documents Billbe seeks to discover are not necessary to his prosecution of this habeas case.

[2]*See State v. Billbe*, No. 80,156 (Kan. Ct. App. Dec. 23, 1999) (unpublished opinion).

sexually suggestive letters from an anonymous stalker.  The letters were either left in the mailbox, in a coffee can in the garage, or were delivered to the victim's grandparents' home.  Several months after the victim first received such correspondence, Billbe informed her that he had received a phone call from an unidentified person who directed him to give her three options: (1) she could provide photographs of herself and Billbe having sexual intercourse; (2) she could spend four hours with the person writing the letters; or (3) she would be raped and blinded with hot needles in the eyes.  Billbe encouraged the victim  to take the first option; she advised Billbe that she would take the second option.

On the day most of the crimes occurred, Billbe called the victim at school, told her to go home and pick up certain items, including specific undergarments, to wear a leather skirt and certain undergarments, and to pick Billbe up from work.  When the victim picked Billbe up, he had her drive him to a motel, stopping at liquor store on the way, where Billbe purchased whiskey and champagne ostensibly for the victim.  Billbe checked he and the victim into a motel, and took her to a room that contained a video camera, and other items, such as a stack of notes that gave her specific instructions on sex acts she was to perform on Billbe.  During this ordeal, Billbe twice briefly left the victim alone in the motel room.  The first time, Billbe left the room with the victim's clothing and car keys.  When he returned, he told the victim that four men had taken her keys and clothing from him.  The second time, upon returning to the room, Billbe told the victim that these four men were outside and had threatened to harm her if she did not comply with Billbe's demands.  Later, Billbe blindfolded the victim; she was then subjected to more sexual assault by a person she could not see, but who she testified smelled like the cologne and mouthwash Billbe used.  Billbe denied that it was him, telling the victim that he had

2

been restrained in the room next door, but that he had watched someone engaging in these sexual acts

with her through a close circuit television.

**PROCEDURAL HISTORY**

After his conviction, Billbe's trial counsel filed a motion for new trial.  Billbe also filed a pro se

motion for new trial, on the basis that trial counsel had a conflict of interest and had given him ineffective

assistance, identifying seventeen instances in which trial counsel was ineffective.  The court appointed

new counsel.  After an evidentiary hearing, the court found that trial counsel was not actively

representing conflicting interests and that any errors of counsel did not affect the jury's verdict.

On direct appeal of his conviction, Billbe again raised the issues of conflict of interest and

ineffective assistance of trial counsel.  Billbe identified seven instances in which trial counsel was

ineffective:

> (1) counsel failed to file a motion in limine or request a ruling outside the jury's
> presence regarding Billbe's exercise of the marital privilege, knowing the
> government would ask questions requiring Billbe to invoke that privilege;
>
> (2) counsel failed to investigate or present evidence concerning whether there
> were any witnesses who could corroborate the victim's testimony that after the
> incident she had self-inflicted bite marks;
>
> (3) counsel failed to obtain or present evidence that alleged simultaneous sex
> acts were physically impossible;
>
> (4) counsel failed to present evidence that Billbe's fingerprints were not found
> on any of the letters, notes, or photographs left by the anonymous stalker;
>
> (5) counsel failed to question anyone from the Crisis Center regarding the
> victim's credibility, demeanor, and actions following the incident, despite
> differences between the victim's trial testimony and the lengthy statement she
> gave shortly after the attack;

3

(6) counsel failed to investigate evidence of prior crimes in order to attack its use at trial;

(7) counsel failed to offer testimony from Billbe's mother, who had seen and recorded the license tag number of a car she had seen at her house and Billbe's house, during the time when anonymous notes had been left there.

The Kansas Court of Appeals affirmed the conviction,[3] and the Kansas Supreme Court denied a petition for review.

Billbe then filed for petition for post conviction relief pursuant to K.S.A. 60-1507, again raising the issue that trial counsel had a conflict of interest, as well as identifying seventeen instances[4] in which trial counsel had rendered ineffective assistance. The district court dismissed Billbe's habeas petition as an improper attempt at a second appeal of issues reached on direct appeal. The Kansas Court of Appeals affirmed the district court's dismissal of the habeas action,[5] and on February 5, 2003, the Kansas Supreme Court denied review. On February 25, 2003, Billbe filed this action for federal habeas relief, raising the conflict of interest issue, and identifying nineteen instances in which trial counsel had rendered ineffective assistance.

**STANDARD**

Because Billbe "filed his habeas petition after April 24, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) govern this [proceeding]."[6] The AEDPA

---

[3]*State v. Billbe*, No. 80,156 (Kan. Ct. App. Dec. 23, 1999) (unpublished opinion).

[4]These seventeen grounds identified by Billbe included the previously listed seven grounds that he addressed in his direct appeal.

[5]*Billbe v. State*, No. 87,060 (Kan. Ct. App. Nov. 1, 2002) (unpublished opinion).

[6]*Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003) (citing *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997)), *cert. denied*, 540 U.S. 973 (2003).

"'circumscribes a federal habeas court's review of a state-court decision.'"[7]  Under 28 U.S.C.

§ 2254(d), a federal court may not grant habeas relief on any claim adjudicated in state court, unless

the adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.[8]

A state court's decision is "contrary to" an established federal law if the state court reaches a

different result than the Supreme Court when presented with facts that are " materially indistinguishable

from a relevant Supreme Court precedent," or if the state court "applies a rule that contradicts the

governing law" set forth in Supreme Court cases.[9]  A decision is an unreasonable application of clearly

established federal law if a "state court identifies the correct governing legal principle from [the Supreme

Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."[10]

Unreasonable application of facts includes an unreasonable extension of a principle, or an unreasonable

refusal to extend a principle to the facts at hand.[11]  The courts are to employ an objective standard in

---

[7]*Anderson v. Mullin*, 327 F.3d 1148, 1152 (10th Cir. 2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003)), *cert.denied*, 540 U.S. 916 (2003).

[8]28 U.S.C. § 2254(d).

[9]*Williams v. Taylor*, 529 U.S. 362, 405 (2000).

[10]*Id.* at 413.

[11]*Id.* at 407.

determining what is unreasonable.[12]

Although unreasonable determinations of fact are a second basis for a writ, a state court's determination of a factual issue shall be presumed to be correct.[13]  The petitioner has the burden of rebutting this presumption by clear and convincing evidence.[14]  "This presumption does not extend to legal determinations or to mixed questions of law and fact."[15]  "That is, the 'deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue.'"[16]  "Ultimately, our review of the state court's proceedings is quite limited, as section 2254(d) sets forth a highly deferential standard for evaluating state-court rulings."[17]

## ANALYSIS

### *Claims Procedurally Barred*

In this federal habeas action, Billbe claims that trial counsel had a conflict of interest, and Billbe identifies nineteen instances of ineffective assistance of counsel.  These nineteen instances of ineffective assistance are essentially the same as the seventeen instances identified in his state habeas petition.[18]

---

[12]*Id.* at 409.

[13]*Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003), *cert. denied*, 540 U.S. 973 (2003); *Fields v. Gibson*, 277 F.3d 1203, 1221 (10th Cir. 2002)..

[14]*Martinez*, 330 F.3d at 1262; *Fields*, 277 F.3d at 1221.

[15]*Martinez*, 330 F.3d at 1262 (citing *Herrera v. Lemaster*, 225 F.3d 1176, 1178-79 (10th Cir. 2000)).

[16]*Id.* (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)).

[17]*Anderson v. Mullin*, 327 F.3d 1148, 1152 (10th Cir. 2003) (internal citations omitted), *cert.denied*, 540 U.S. 916 (2003).

[18]In the state habeas action, Billbe's ineffective assistance claim was based on seventeen grounds, which encompass the nineteen grounds he raises in this federal habeas action.  Despite the multitude of "grounds" cited by Billbe in both the state habeas action and this federal habeas action, the Court is able to generally identify the following broad claims of ineffective assistance: that his trial counsel had: been unprepared; lied about his trial

The Kansas Court of Appeals determined that Billbe's habeas petition was procedurally defaulted because his claims of conflict of interest and ineffective assistance were addressed in his direct appeal, and he could not use a habeas petition "as an attempted substitute for a second appeal."[19]  Having raised seven instances of ineffective assistance on direct appeal, Billbe argued that his habeas petition should be considered as a more detailed presentation of his ineffective assistance claim.  The Kansas Court of Appeals rejected this suggestion, finding that Billbe had the opportunity to present these issues on direct appeal, and had "not shown exceptional circumstances exist" warranting Billbe raising any issues or offering additional arguments not presented in the direct appeal.

Federal habeas review of claims defaulted in state court pursuant to an independent and adequate state procedural rule is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[20]  If the state court deems unexhausted claims procedurally defaulted, they are procedurally barred from federal court consideration.[21]  This rule applies to procedurally defaulted claims pursuant to substantive or procedural state law.[22]

The independent requirement is met if the last court that rendered a judgment in the case clearly

---

strategy; failed to follow Billbe's suggested strategies; failed to offer evidence impeaching the victim's testimony, including prior inconsistent statements, time cards and phone records, as well as the testimony of motel clerks; failed to object to prosecutor's questions; failed to object to the state's expert; failed to call witnesses from the crisis center; failed to protect confidential marital communications; and failed to examine, investigate and present evidence on the typewriter and typewritten letters.

[19]*Billbe v. State*, No. 87,060, at *5 (Kan. Ct. App. Nov. 1, 2002) (unpublished opinion).

[20]*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

[21]*See id.* at 735 n.1.

[22]*Id.* at 729.

and expressly stated that its decision rested upon a state procedural bar.[23]  Here, the Kansas Court of

Appeals' decision was based on such an independent state procedural bar.  The Kansas Court of

Appeals relied on Kansas case law as well as a rule of the Kansas Supreme Court, in holding that

Billbe's habeas petition could not be used as a substitute for a second appeal of conflict of interest and

ineffective assistance of counsel issues raised in the first appeal.[24]  The Kansas Court of Appeals'

decision was also based on an adequate state procedural rule.  Denial of a K.S.A. 60-1507 motion as

an impermissible second appeal is a firmly established and regularly followed rule of law in Kansas.

This Court has already recognized this procedural bar as adequate, noting that "[i]t is well established in

Kansas that a § 60-1507 motion can not be used as a substitute for a direct appeal involving mere trial

errors or as a substitute for a second appeal."[25]

Because the issues in this habeas action were properly determined to be procedurally defaulted

in the state court, this Court is procedurally barred from review of such claims, absent a showing of

cause and prejudice or of a fundamental miscarriage of justice.[26]  Billbe makes no such showing.  He

offers no reason for not raising all of his claims of ineffective assistance of counsel in his direct appeal.[27]

---

[23]*Harris v. Reed*, 489 U.S. 255, 263 (1989).

[24]*Billbe v. State*, No. 87,060, at *5 (Kan. Ct. App. Nov. 1, 2002) (unpublished opinion) (citing *Maggard v. State*, 27 Kan. App. 2d 1060, 1064, 11 P.3d 89 (2000); Kan. Sup. Ct. R. 183(c)); *see also Carmichael v. State*, 255 Kan. 10, 14, 872 P.2d 240, 244 (1994); *Estes v. State*, 221 Kan. 412, 412, 559 P.2d 392, 392-93 (1977); *Jones v. State*, 3 Kan. App. 2d 578, 578-79, 598 P.2d 565, 567 (1979).

[25]*Zimmer v. McKune*, 87 F. Supp. 2d 1153, 1158 (D. Kan. 2000) (citing *Taylor v. State*, 251 Kan. 272, 834 P.2d 1325, 1330 (1992); *Kirk v. State*, 220 Kan. 278, 552 P.2d 633 (1976); *Carmichael v. State*, 18 Kan. App. 2d 435, 856 P.2d 934, 939 (1993)).

[26]*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

[27]*See Coleman*, 501 U.S. at 753 ("'cause' under the cause and prejudice test must be something *external* to the petitioner").

And, he shows neither prejudice nor that absent review, there will be a fundamental miscarriage of justice.

Nevertheless, this Court reviews the claims Billbe raised in his direct appeal, because those claims have been exhausted; and this Court reviews the additional claims Billbe first raised in his state habeas petition.  For, as the Supreme Court stated in *Ylst v. Nunnemaker*,[28]

> State procedural bars are not immortal, however; they may expire because of later actions by state courts. If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available.[29]

In this case, despite determining that Billbe's claims were procedurally defaulted, the last state court presented with Billbe's claims, nevertheless reviewed the merits of some of the grounds of ineffective assistance that Billbe did not raise on direct appeal but raised in his state habeas action.  Because the state court reviewed the merits of these claims, Billbe in effect was able to fairly present the substance of his claims in the state habeas action, such that this Court may review those claims.[30]  Thus, this Court will review the seven claims Billbe raised on direct appeal, as well as the additional claims the Kansas Court of Appeals reviewed in the state habeas action.

***Ineffective Assistance of Counsel***

Billbe is entitled to relief on his claims of ineffective assistance only if the state court's decision

---

[28]501 U.S. 797 (1991).

[29]*Id.* at 801.

[30]*See* 28 U.S.C. § 2254(b)(1)(A); *Hawkins v. Mullin*, 291 F.3d 658, 669 (2002) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *Picard v. Connor*, 404 U.S. 270, 276-77 (1971); *Thomas v. Gibson*, 218 F.3d 1213, 1221 n.6 (10th Cir. 2000); *Smallwood v. Gibson*, 191 F.3d 1257, 1267 (10th Cir. 1999)).

was contrary to or involved an unreasonable application of controlling federal law.[31]

The state court reviewed Billbe's claims under the standards of established federal law, as set forth in *Strickland v. Washington*.[32]  The state court thus required Billbe to show that his counsel's performance was constitutionally deficient, such that he was not functioning as the "counsel" guaranteed by the Sixth Amendment, and that Billbe was prejudiced by his counsel's errors.[33]  To prove constitutionally deficient performance, a petitioner must show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.[34]  If he can meet this standard, then a petitioner must establish prejudice by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[35]  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[36]

On review, this Court finds that the state court reasonably applied the *Strickland* standards to Billbe's claims and reached a decision in accordance with controlling federal law.  The state court reasonably rejected a number of Billbe's claims because Billbe failed to show prejudice, that is a reasonable probability that but for counsel's alleged errors, the outcome of the proceeding would have

---

[31]28 U.S.C. § 2254(d)(1).

[32]466 U.S. 668 (1984).

[33]*Id.* at 687.

[34]*Id.* at 687-88.

[35]*Id.* at 694.

[36]*Id.*

been different.  For example, Billbe claims that counsel failed to investigate, develop or present

evidence that would impeach witnesses' testimony about events on the date of the kidnaping and rape.

Specifically, Billbe claims that counsel failed to investigate, develop or present evidence impeaching the

victim's statements that Billbe had picked her up from school and about the chronology of events.  He

also claims that counsel failed to impeach the motel clerk's testimony that Billbe had checked into the

motel.  But, Billbe failed to show how these alleged errors prejudiced him.  For Billbe did not deny

having participating in some of these events; and he did not deny that *someone* had sex with the victim

while she was blindfolded.  Rather, Billbe's defense at trial was that he was innocent of the crime of

kidnaping because he was compelled to tie up the victim by the unidentified perpetrators of the crime.

Indeed, at trial Billbe testified that because a third party had threatened to harm Billbe's family, Billbe

was compelled to follow the third party's directions for Billbe to pick up the victim at school, take her

to a motel, and undress and blindfold her so that the third party could have sex with her.  Similarly,

Billbe failed to show prejudice from counsel's alleged error in not calling witnesses to testify about the

victim's unremarkable demeanor after the crimes.  For at trial, Billbe did not deny that *someone* had

sexually assaulted the blindfolded victim at the motel.

Billbe also fails to show he was prejudiced by counsel's failure to present evidence impeaching

the victim's claim that she had visible, self-inflicted bite marks on her hands for five days after the

incident.  As the state court noted, although Billbe claimed there were dozens of such witnesses that

counsel could have called, Billbe produced none of these witnesses at the hearing on his motion for new

trial.  Billbe's failure to show that these witnesses even existed certainly undermines his claim that

counsel's performance was deficient.  Moreover, Billbe has not shown how this evidence would have

11

beneficially affected the outcome.  As the state court pointed out, "assertions of counsel in an appellate brief do not constitute evidence or remedy inadequacies in the record on appeal;"[37] and bare assertions unsupported by evidence, are insufficient to demonstrate ineffective assistance of counsel.

Billbe also failed to show how he was prejudiced from other claimed deficiencies of trial counsel, such as: failure to present testimony from Billbe's mother about vehicles parked at their residence around the time the stalker sent correspondence to the victim; failure to object to the state's expert; and failure to present evidence from a document examiner concerning handwritten and typewritten documents at issue.  Not only did Billbe not show how such evidence might have been exculpatory, he failed to show a reasonable probability that it would have affected the outcome of the trial.  Nor did Billbe show that he was prejudiced by counsel's failure to protect privileged marital communications.  The record demonstrates that this claimed error arose from the state's cross examination of Billbe at trial, and that Billbe's spontaneous invocation of the marital privilege had no effect on the outcome and did not undermine the fundamental fairness of the trial because any error was ameliorated by the judge's curative jury instruction.

Moreover, in addition to failing to show prejudice with respect to some of the alleged instances of ineffective assistance, Billbe failed to show that counsel's performance was at all deficient.  For example, despite Billbe's claims otherwise, trial counsel testified that he: argued the physical impossibility of some of the alleged sex acts; and determined the nature of prior crimes evidence and opposed its admission.  In any event, Billbe did not demonstrate any reasonable probability that the

---

[37]*Billbe v. State*, No. 80,156, at * 12 (Kan. Ct. App. Dec. 23, 1999) (quoting *Major v. Castlegate, Inc.*, 23 Kan. Ct. App. 694, 935 P.2d 225 (1997)).

admission of this evidence affected the outcome.

Similarly, Billbe made no showing of prejudice with respect to his complaints that counsel failed to follow Billbe's suggested trial strategy or object to certain questions by the prosecutor. Not only did Billbe fail to specify or explain the nature and import of these alleged failures, he failed to explain how any of these all failures, on their own or cumulatively, affected the outcome of the trial. Moreover, a counsel's strategic decisions are seldom demonstrative of ineffective assistance.[38] For these reasons, habeas relief is not warranted on these grounds.

### *Conflict of Interest of Trial Counsel*

Billbe also claims that his counsel's conflict of interest denied him effective assistance of counsel. Where an ineffective assistance claim is based on counsel's conflict of interest, *Strickland* teaches that "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"[39] A potential conflict is not sufficient to give rise to a violation of the Sixth Amendment.[40] "An actual conflict of interest exists only if counsel was 'forced to make choices advancing . . . interests to the detriment of his client.'"[41] Defendant must also identify specific instances

---

[38] *See Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) ("In applying this test, we give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" (quoting *Strickland,* 466 U.S. at 690)).

[39] *Strickland*, 466 U.S. at 692 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348, 350, (1980) (footnote omitted)).

[40] *United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir. 1998).

[41] *United States. v. Powell*, No. 01-20021, 2004 WL 1534176, at *14 (D. Kan. May 10, 2004) (quoting *Workman v. Mullin*, 342 F.3d 1100, 1107 (10th Cir.2003) (quoting *Alvarez*, 137 F.3d at 1251-52)).

in the record that suggest his interests were damaged for the benefit of another party.[42]

On review, this Court finds that the state court reasonably applied the *Strickland* standards to Billbe's conflict of interest claim, reaching a decision in accordance with controlling federal law.[43]  The state court reasonably determined that counsel was not actively representing conflicting interests. Counsel was a board member of the Finney County Family Crisis Center (center), which provided support and advocacy to the victim.  Counsel did not represent the center in any legal capacity; and as a board member, his role was limited to fund raising and attending monthly board meetings. At these meetings, the board: set and reviewed policy; hired an executive director for the center; and reviewed and received briefings about organizational challenges.  The board was not involved in the daily operations of the center, the board did not discuss or participate in the center's work with victims, nor was the board even aware of the identity of the victims serviced by the center.  In fact, counsel testified that he was unaware that the victim was being serviced by the center, until he saw the center's director with the victim at the preliminary hearing.  Counsel testified that at that point he advised Billbe of his position on the board; and counsel and the center's director agreed that they would not discuss the case.  Reviewing courts "generally presume that the lawyer is fully conscious of the overarching duty of complete loyalty to his or her client.  Trial courts appropriately and 'necessarily rely in large measure upon the good faith and good judgment of defense counsel.'"[44]

---

[42]*Id.* (citing *Workman*, 342 F.3d at 1107).

[43]*State v. Billbe*, No. 80,156, at *10 (Kan. Ct. App. Dec. 23, 1999) (unpublished opinion) (quoting *State v. Brown*, 266 Kan. 563, 577, 973 P.2d 773 (1999) (explaining that counsel's performance must be deficient and prejudicial to an extent that deprived the defendant of a fair trial)).

[44]*Burger v. Kemp*, 483 U.S. 776, 784 (1987) (quoting *Cuyler*, 446 U.S. at 347).

Although Billbe claims that during the trial his counsel never informed him of his position on the center's board, and that Billbe would have requested new counsel had he known this fact, Billbe does not demonstrate prejudice.  In fact, only one of the many alleged instances of ineffective assistance relates to counsel's status as a board member at the center.  Billbe claims that this alleged conflict caused counsel to not interview center employees about the victim's demeanor after the attack.  Of course, as previously discussed, since Billbe's defense was compulsion, and since he did not deny that someone had performed sex acts on the victim in the motel room, Billbe does not demonstrate how this evidence might have affected the outcome of his case.  Billbe also claims that counsel neglected to interview center employees about whether they had encouraged or suggested to the victim that Billbe was the perpetrator.  Again, Billbe offers no support for his bald assertion that center employees might have had such exculpatory testimony.

The state court's decision was not contrary to nor an unreasonable application of established federal law pertaining to conflicts of interest, nor based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  Thus habeas relief is not warranted on this ground.

**IT IS THEREFORE ORDERED BY THE COURT** that the Petition for a Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254 is DENIED.

**IT IS FURTHER ORDERED BY THE COURT** that the Motion for Discovery (Doc. 31) is DENIED.

**IT IS SO ORDERED.**

15

Dated this 14th day of April 2005.


 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE